Mr. DiMatteo? Thank you, Your Honor. May it please the Court, the District Court committed reversible error in finding that British Telecom's actions against Cable 1 did not constitute a real and immediate injury against ARRIS. Specifically, the District Court did not understand that British Telecom's patent assertions against Cable 1's network equipment was, at its core, an accusation that ARRIS is a contributory infringer. There clearly was a direct threat because the allegations, British Telecom's assertions against this equipment was directly accusing ARRIS' equipment of contributory infringement. There are no other uses for this equipment but to comply with the industry standards that British Telecom asserts as its basis for infringement. Are you worried about induced infringement, too? Inducement as well. That goes into, you know, they're indirect infringers. The clearest argument as contributory infringers. They also can be accused of indirect infringers by selling this equipment which complies with these industry standards. That injury as such, the injury is direct and significant. They have an obligation as contributory infringers or equipment suppliers to indemnify Cable 1 and others that they sell the equipment to, and they're injured by this Cisco license. British Telecom did grant one license to another equipment manufacturer but refuses to grant any others but instead go against the cable companies. Now that all of these other cases are pending in other courts, wouldn't your client have the opportunity or perhaps the obligation just to proceed in the other courts? That is, how critical is it to respect this more or less standard rule about whoever gets to whichever court first perhaps ought to be able to choose the forum for the issue? Well, in this case, ARIS got to the court first. But nonetheless, all these ensuing events, how critical is it nonetheless to respect that protocol? Well, that allows ARIS, by continuing with this case, to focus BT's assertion against it. It will take the burden of discovery. It will take the burden of proving these patents invalid. It will take the burden of proving these patents are not infringed. That's why it's filed this. It's not fair that its customers get sued in an indirect fashion. To be sure, ARIS could participate in this suit that's now been filed. But it should not have to. It should be allowed to continue with its first filed case based on the declaratory judgment statute because that statute is designed to protect the kind of injury that ARIS is experiencing. When you understand BT's patent assertion, it's pretty clear that all they point to is ARIS's two products. Their modems, their cable modems that are in your homes that you can connect your computer and voice to, and the equipment those modems talk to, what they call the termination systems that exist at the cable company's operations. Now, this is important. Every single assertion that British Telecom makes is based on those two pieces of equipment. The modem, the termination system, or the combination of both. And that's clear. For example, they assert the 989 patent. That patent's principal invention, the material part of it, is what they call a network element. When they look for infringement, they point to ARIS's modem as being a network element. In the same breath, when they look for the host element, another claim element, they look at ARIS's termination system. And it's very clear that this is a direct attack against ARIS's equipment. If I can point your direction. There's also a suggestion in the letter from Cable One to ARIS. It's at 588 of the appendix that ARIS either designed or participated in the design of the voice over IP system that Cable One has. How do we know whether that's true? It's true to the extent that when Cable One decided to add voice to its network, which many companies do now, they went for a complete solution from ARIS. In short, the key components to the voice over the internet for a cable company is the modem, being able to plug a phone into that, and having that talk to a termination system, which then connects it in a voice over IP that was already developed. What a cable company needs is the ability for its customers to plug into its phone at its house. But is there anything more in the record about ARIS's role in designing the system than this one letter from Cable One? No. But they didn't design the system at a level that's relevant to BT's patent assertions. What they did was they submitted to or sold to Cable One the modem and the termination system that is compliant with the industry standard that allows for voice over internet and voice communications. And that's the center of British Telecom's assertion. They say, you infringe our patents because these components sold to you by ARIS comply with the industry standards. Why did Cable One also seek indemnification from Nortel? They went through all the accused products. Nortel is referenced on one patent for a switch. It's an incorrect assertion, but nevertheless, that's the assertion that British Telecom makes. So Cable One said, look, they're pointing to all of you. We're going to put you all on notice. So that was Nortel's role. Nortel makes a switch that connects to the phone system, what they call a soft switch. But the central material components to the voice aspect of Cable One was ARIS's modems and termination systems. And that's very clear. And the injury, and demonstrating the fact that this is an equipment-focused assertion, is to take a look at the Cisco license, which we don't have, but we can see the effects. British Telecom has clearly represented it's granted a license to Cisco, which also makes the same two components. The modems make you sell. We don't have the license. We have asked for it. We still have yet to receive it. But we do know that in its assertions, British Telecom says any equipment, any modems or termination systems made by Cisco are not subject to this patent assertion. We're not going to go for a license for that. We've already granted one. Now that clearly puts ARIS at a competitive disadvantage, a severe one. Because now Cable One says, why should I buy from ARIS when I can buy the same equipment, let's say at the same price, from somebody who already has a license? And the assertion is being made, and it sort of drives ARIS's customers away. That is a real injury to ARIS in this case. And again, it's premised on the understanding that every assertion is focused on those two components. Indeed, one patent, the 264 patent, only talks about one product, and that's one made by the termination system made and supplied by ARIS. Does ARIS indemnify its customers? It has no express written contract to indemnify. The indemnity obligations are governed by the Uniform Commercial Code, the UCC, and that's equivalent as enacted in the state of Georgia and elsewhere. And it has just an obligation to its customers to protect its products. These are not products that have non-infringing uses. These are products that are built and designed for one purpose and one purpose only, to comply with these standards so cable companies can put them in, plug them in, and earn money for this service for their customers. Now, the $64 question in this courtroom is, why is it that British Telecom is not asserting these patents against equipment manufacturers? Why are they asserting it against cable companies and cable companies only and fighting so hard to keep ARIS out of the case? The honest answer is, we don't know. But the likely answer is, they believe that they'll have a much better damage award by asserting these patents against cable companies that earn billions of dollars as opposed to equipment manufacturers that only earn millions of dollars. There is nothing illegal about trying to maximize your return, is there? Nothing illegal, but it does allow an equipment manufacturer, a declaratory judgment jurisdiction, to put a stop to this. This is why the statute was created, to allow people who are really the real targets of this to come in and defend their products, so that the customers don't get hit with unreasonable damage claims. But the statute is focused on the real people who are injured and who may ultimately be responsible, as in this case, the indemnity obligations that ARIS has to Cable One and others. Now, since the filing of this lawsuit, British Telecom has filed its case against Cox and Cable One, and the allegations are identical. Same equipment from ARIS, same products, same allegations. Is ARIS' real concern here that it's going to lose customers or that it's going to be sued for indirect infringement? In this case, based on BT's conduct, it's going to lose customers, not get sued for indirect infringement, but be held accountable for it in an indemnification claim. Well, isn't that economic harm and not an adverse legal interest? You've got to have a legal interest, don't you? No, the legal interest is clearly here because of the economics. By law, they're interfering with their free right to sell these products unencumbered by these infringement allegations. That's what the declaratory judgment is set up for, free unencumbered sale of these products, not haunted by these infringement allegations. MetaMun says you have to have an adverse legal interest, not just economic harm. You can't just say, I might lose a customer. The adverse legal interest is that borne by its obligations to identify, indemnify, and its right to not sell these products. Our theory is that the UCC requires them to indemnify even if they haven't expressly done so. Exactly. Thank you. I'm in my rebuttal time. Mr. Shelley. Thank you, Your Honor. Please proceed. I'd like to first respond to a question addressed by the court, and that is, how do we know that arrogance,  is not the cause of the crime? In the case of Arras, Arras provided the complete solution. And what the record reflects is that Arras, in fact, did not provide the complete solution. As the court has pointed out in Arras' brief at page 8, page A588, Arras tendered for indemnification, I'm sorry, Cable 1 tendered for indemnification to both Arras and to Nortel. And if we take a look at the presentation that was made by IP Value, BT's licensing agent, what we see here is that the allegation is actually that Nortel, not Arras, was the primary technology and services provider of the voice over internet, the VOIP services alleged to infringe. And I'd like to point the court to two pages in the appendix. One is A185. And there on the right-hand side, the presentation that was made to Cable 1 states, Cable 1 has selected Nortel as its primary VOIP technology and professional services provider, including its packet cable qualified CS2000 compact soft switch. Then at page 195 of the presentation, it's stated in the box at the bottom that Cable 1 has signed an agreement with Nortel to provide a complete end-to-end VOIP solution incorporating Nortel technology and professional services. So the patents are directed in some sense to VOIP, and the primary designer and suppliers of the equipment that Cable 1 can receive in that regard is Nortel. Are you telling us that these Arras patents, or rather these BT patents, are not infringed by the products that Arras provides? I am saying that, Your Honor. We do not assert that they directly infringe. We do not assert that they contributorily infringe. Has BT provided some sort of assurance, some sort of disclaimer? It has not. It has not. It has not provided a covenant not to sue, and the cases say that may be a factor, but it is not dispositive. A covenant of non-infringement, not a covenant not to sue. Right. That's what would be needed, I would think, to support what you're telling us. Well, actually, I can take the Court through the record and show the Court exactly how it is that Arras does not infringe, and I'd like to do that. I'd like to show the Court exactly how it is that Arras is not impliedly a direct infringer or contributory infringer. Are you saying that this panel now should hold, as a matter of law, that the Arras products are not being infringed in any of these suits which are being brought by BT? No. What I am saying is that it was incumbent upon Arras to establish adverse legal interests. They've tried to do that in one of two ways. First, they say that BT allegedly implied that Arras is an infringer. There's no suggestion that the BT ever expressly said that Arras is an infringer. Well, let me say what you're telling us. You're telling us that the BT position is that the Arras products do not infringe, that they are not infringed by the defendants in these other cases. That is the position that is in this record, Your Honor. That's right. A covenant not to sue, if you think they're not infringed. I don't know that we were asked to give them a covenant not to sue, and I don't know what circumstances arose concerning that. What I do know is that they rely exclusively on the presentation that was made to Cable 1, and if you look at the face of that presentation, you cannot imply an allegation against Arras because every single one of the combinations that are alleged to infringe include a Nortel component. So you are representing to us, as a matter of law or whatever commercial position, that the Arras products, the products that the defendants, the customers in these other cases, are charged with infringing do not, insofar as they're provided by Arras, do not infringe the BT patents? They do not directly infringe, and they do not contributorily infringe. They do not infringe. Right. What about the role of the standards here? Well, the standards, there's not a standards-based case here to be made for several reasons. To begin, there's no evidence that the DOCSIS and PACSIS standards have to be used in an infringing way. The presentation that was provided specifies that only certain versions of DOCSIS support a claim of infringement, implying that certain versions can be chosen for use without any colorable infringement. And there are a couple of examples of this in the record. There's one at A256 where it states that only the use of DOCSIS 1.1 and PACSIS Cable 1 or later versions give rise to an infringement. And then at A293, it's stated in relation to one of the patents that real-time polling is stated to be mandatory, and then they go on to make the infringement argument based on that. And then they say in the bottom of the page that DOCSIS 1.0 lacks the ability to conduct real-time polling. So there are certain DOCSIS standards that are alleged to infringe and certain that are clearly not to allege infringe. The other reason is that ARIS hasn't shown you must infringe to practice the standard. Many of the cited sections in the standards are presented as optional. At A260, the statements are that the CMTS may use session classes, that it's expected that overlapping session classes could be defined, and that these session classes may preempt certain resources. And then in another patent, the 532 at pages 286 through 288, they don't say there's definitely infringement. They give three examples of how there might be infringement with the same kind of language that it may be created. Can I go back to where Judge Dykatis a moment ago? Sure. If your argument here is there's no infringement, why don't you just give them a covenant? Your Honor. Then it would be, as you acknowledged a few moments ago, an easy matter. Then there is no adverse legal interest even arguable. Why should VT give them a covenant not to sue when, for all VT knows, maybe they're out there inducing infringement unbeknownst to VT? How would they be doing that, by selling their covenant? Well, I don't know how they might be doing that, but the point is that VT doesn't need to forfeit a potential future right and look into the future to dispel acts. All they've done is gone against the cable companies. They didn't go against Aris. Aris stepped in at the invitation. But you're an attorney. You can write these contracts. You could write a covenant not to sue that is tied directly to their current and known conduct, and then you would be holding that piece of paper up to us and saying this case is frivolous. But you're not. You're asking us to, as Judge Newman points out, decide a case that's not before us. You're asking us to decide there's no infringement. No, I'm not asking the court to find that there's no infringement. You told us there was no infringement. I did in response to the court's question. Do you accept your representation? Of course. That ends the case? Yes. Yes. But the issue that was presented in the briefs was simply whether the presentation made an implied case of infringement, and it does not because there is no underlying infringement against Aris through the sale of the CMTS. So the covenant that says that, just exactly that. That their products, whether in the hands of their customers, do not infringe the patents that are said to be infringed by their products. There's a difference between whether they themselves directly infringe and whether they directly contributorily infringe, which they do not. You just told us that in either case, neither direct nor indirect, do their products infringe the BT patents. That's right. And then their products are used by Cable 1 in an infringing manner. And do not infringe. No, they do infringe when they're used by Cable. The network infringes. Cable 1 puts together a network comprised of Nortel and Aris components. That network infringes. What is the Cisco license? What's it all licensed to do? There is no Cisco license in the record. No, I understand. It was represented that Cisco was licensed. Cisco and BT are big companies, as likely as not. They're competitors, right? Yeah, no. No? Well, I don't honestly know if they're competitors, Your Honor, but what they did was they have a large cross-license where they basically cross-license each to sell their components and their systems and let customers use them as they may. But that implies nothing about whether the components infringe or not. The express license simply says that we're going to let you sell your components and we're not going to sue you for how your customers use them, whether or not you could argue that they're infringing or not. Well, that sort of is part of the reason that Aris is concerned, that Cisco is selling equipment just the way Aris sells equipment, and you're protecting Cisco by giving them the license to do that so they don't have to worry about being sued, which is what you just said. I understand that, Your Honor, and I do not say that they don't have a business interest here and a potential concern as a result of that, but under MedImmune, they're required to show an adverse legal interest, and they're trying to show it in one of two ways. My point is, why does Cisco need a license and benefit from a license if Aris doesn't have to worry about being sued, if the manufacturers don't have to worry about being sued? Because the license isn't under this patent. It's a broad cross-license under the entire portfolios of the company. They're not even looking at these patents individually, which is the first step they need to make to even begin to make the argument they want to make. But why does this infringement presentation make a point that Cisco's licensed? Because if Cisco is licensed, and if the express terms of the broad cross-license enable the customer to use it, it would be improper use of the patents to collect money on something that's already been contractually permitted to a third-party beneficiary contract. That's all it's saying. It's saying that BT gave rights to Cisco. Very much as though what you're saying to the customers, if you use Cisco equipment as a license, you don't have to worry about infringement. Isn't that what it says? That's exactly what it's saying. But how is that implying that they're infringing? BT is free to say to Cisco, I'm going to let your customers use your equipment however they want, whether your equipment's infringing or not infringing. It's a very broad cross-license, not drawn to these patents. It's looking to clear the dust completely. So it does give them a business concern. It doesn't give them an adverse legal interest here. They're seeking—they're asserting that they're legally adverse to BT in two respects. One, that ARIS has been impliedly an infringer and that Cable 1 asked ARIS to indemnify it. It didn't put the indemnification agreement in the record.  There's no description of terms. There's not even an actual acknowledgment by ARIS that it agreed to indemnify. The argument under the UCC adds absolutely nothing to this because the UCC only covers sales made—what it covers is it only warrants that the goods come free and clear of a claim of infringement at the time they're delivered. And no one's asserting that the ARIS goods at the time they're delivered infringe. Their argument is that when you hook it up to the system, then the system necessarily infringes so that they were impliedly— So that's their argument or that's your argument? That's their argument. They're alleging that they're impliedly— Their position is that it does not infringe. Correct. Absolutely, Your Honor, because their equipment has substantial non-infringing uses. Their equipment is used for transmitting— If Cable One used Cisco equipment instead of ARIS equipment, it wouldn't be infringing either, right? That's right, because there is a license with Cisco that says your customer is going to be a third-party beneficiary of this license. So that sounds very much as though you are going to infringe as a result of using the ARIS equipment. No. That doesn't follow logically, Your Honor, because when you have a broad cross-license that goes across entire portfolios, you're not looking at each individual patent to see whether there would be infringement. There may be a thousand patents that each company has, and when one licenses—when one says to the other, I'm not going to sue your customers, that's not saying— It's specific to these patents. No, it isn't. With the presentation with respect to these patents, you said to Cable One, don't worry, you're not infringing these patents if you use Cisco equipment, right? Yes, but we did not say that the license was explicitly about these four patents. Well, it covered these four patents. Yes. That's the point, isn't it? No, that's not the point, because it's not—the point they want to make is that because a product is licensed, it implies that you thought that it infringes, but that doesn't logically follow here, because what happened was that there was a broad cross-license involving all the patents of the company. Nobody was looking to see whether these particular patents were infringed by the components that were being delivered by Aris or not. So it's—the logic doesn't follow. Final thought, Mr. Schallach? You have a final thought? Well, yes, Your Honor. I simply wanted to point out that they haven't made a standards-based case here, because there's no showing that the standards are mandatory. I think you've said that. Yeah. Thank you, Mr. Schallach. Thank you. Mr. DiMantio, you heard him say a half dozen times you don't infringe. Does that satisfy you? I'm almost there. If we certainly had a Cisco license and had that covenant not to sue, that our products, as sold and used by our customers as they're designed to use, does not infringe their patents, I would not be here or in the District of Georgia asserting my declaratory judgment rights. But that's not what the record reflects. And let me begin by just two or three pages in the appendix. At 237, talking about a host element, the ARIS CMTS supports a number of protocols, including DOCSIS. 238, the ARIS CMTS generates packet-based flows according to DOCSIS. And these are reading claim elements. The ARIS CTS complies with DOCSIS and, therefore, does this element and this element and this element. Every assertion is based on the use of our products as sold. If BT, we asked them for a license, they refused. If they granted us a covenant not to sue for our sales, manufactured sales and use of our products to comply with this, we would not be here. But they refused to do that. And that's the legal harm. We do have a threat of suit. Perhaps they have remedied that. This afternoon. Your Honor, perhaps. But I don't know if I have the authority now to take Mr. Shalik's representations here. I appreciated you pinning him down on that as freeing my client up from all liability. But if true, then there would be no jurisdiction. But the statement has to be clear and unequivocal. British Telecom would have to represent. And this Court finds that their representation here, that the use, the sale and use of our equipment as it complies with these standards does not infringe. If that's true, then there's no declaratory judgment jurisdiction. And we have what we need. And our clients can use our products freely without their allegations of infringement. We'll have exhausted their case. But they haven't done that. One other brief point that Mr. Shalik mentioned about optional features of these standards. These companies, to comply with the standard, have to sell equipment that can perform all the options. The cable companies have the election to decide which ones to use. So our sales and use has every option available under the standard. Thank you.